UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELLY MCSEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CV-878 JSD |
| | ) |
| DENISE HACKER, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on review of plaintiff Kelly McSean's submission of her second amended complaint.[1] *See* ECF No. 18. After reviewing the second amended complaint, the Court will dismiss plaintiff's official capacity claims against defendants, as well as plaintiff's claims against defendant Dr. David Hunter. The Court will issue process, however, as to plaintiff's claims against defendants Linda Moll, Misty Kindle and Denise Hacker in their individual capacities as to plaintiff's claims for a violation of her Equal Protection rights and deliberate indifference to her serious medical needs.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] Plaintiff is a transgendered inmate and goes by the pronouns she/her. She indicates that she is formerly known as Larry J. Bemboom. Plaintiff legally changed her name to Kelly McSean in October of 2021. *See In re Larry J. Bemboom*, No. 21SF-DR00274 (24th Jud. Cir., St. Francois County Court).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 on July 12, 2023. [ECF No. 1]. Although plaintiff is currently a pretrial detainee housed at St. Francois County Jail in Farmington, Missouri, the allegations in the original complaint were related to purported civil rights violations which allegedly occurred while she was housed at Southeast Missouri Mental Health Center (SMMHC) in Farmington, Missouri, while she was enrolled in the Sex Offender Rehabilitation and Treatment Services (SORTS) program.

Although this was the first-filed case in this district under the name Kelly McSean,[2] plaintiff filed six additional cases in rapid succession after this one. Four of plaintiff's cases pertain to purported violations of her transgendered rights, with all but one of those cases (except the instant action) discussing alleged violations at St. Francois County Jail.[3] *See McSean v. Bullock, et al.*, No. 4:23-CV-1072 HEA (E.D.Mo.) (alleging violations of due process rights for being placed in disciplinary segregation at St. Francois County Jail without the issuance of a conduct violation or hearing); *McSean v. Lemons, et al.,* No. 4:23-CV-1086 RLW (E.D.Mo.) (alleging that individuals at St. Francois County Jail denied her the ability to purchase female clothing and retaliated against her for exercising her First Amendment rights); *McSean v. Bullock, et al.,* No. 4:23-CV-1174 JMB (E.D.Mo.) (alleging that individuals at the St. Francois County Jail denied her the ability to purchase female clothing, verbally abused her, retaliated against her, sexually harassed her and violated her Equal Protection rights); *McSean v. Foot, et al.,* No. 4:24-CV-00094 SEP (E.D.Mo.) (alleging excessive force at St. Francois County Jail, as well as deliberate difference to her serious medical needs); *McSean v. Harris*, No. 4:23-CV-1706 JMB (E.D.Mo.) (alleging First Amendment retaliation with regard to the exercise of her transgendered rights); *McSean v. Chamberlain, et al.*, No. 4:23-CV-1225 MTS (E.D.Mo.) (alleging an strip search in

---

[2]Plaintiff filed a case in December of 2008 under her prior name, Larry Bemboom regarding her time at Northeast Correctional Center (NECC). *See Bemboom v. Dunn, et al.,* No. 2:08-CV-00067 JCH (E.D.Mo.). Plaintiff's action was dismissed on summary judgment on December 15, 2009. *Id.* While plaintiff was in the SORTS Unit at Fulton State Hospital in Fulton, Missouri, she also filed two cases under the name Larry Bemboom in the Western District of Missouri which were dismissed prior to service pursuant to 28 U.S.C. § 1915. *See Bemboom v. Martin-Forman,* No. 2:13-CV-4168 FJG (W.D.Mo.) and *Bemboom v. Heyer*, *et al.*, No. 2:14-CV4129 BCW (W.D.Mo.).

[3]In all cases in which plaintiff is suing over her transgendered rights at the St. Francois County Jail, plaintiff claims that she was diagnosed with gender dysphoria while detained at SMMHC. Plaintiff, however, has not made the same allegation in this action, meaning that she has not alleged that she was diagnosed with gender dysphoria during her time at SMMHC. Additionally, there is no mention of a diagnosis of gender dysphoria in the last Annual Report of Mental Condition filed in plaintiff's probate case in October of 2019. *See In re Larry Bemboom*, No. 08B7-PR00260 (13th Jud. Cir., Boone County Court).

violation of her Fourteenth Amendment rights, violations of her Equal Protection rights, excessive force, deliberate indifference to her serious medical needs and failure to properly train employees at SMMHC).

Some background on plaintiff's history in the Missouri Department of Corrections (MDOC) and the SORTS program is helpful to establish how plaintiff is currently a pretrial detainee at St. Francois County Jail while having also been a civil detainee in the SORTS program.

It appears that plaintiff was placed in the custody of the MDOC in November of 2003, after she pled guilty on November 17, 2003, to felony sexual assault and deviate sexual assault. *See State v. Bemboom*, No. 03CR169024-01 (13th Jud. Cir., Boone County Court). Plaintiff was sentenced to five years in the MDOC. However due to plaintiff's history as a sex offender, a matter was opened in the Missouri Probate Court on August 22, 2008, seeking to have plaintiff classified as a sexually violent predator under Missouri law. *See In re Larry Bemboom*, No. 08B7-PR00260 (13th Jud. Cir., Boone County Court). Plaintiff was classified as a sexually violent predator on August 7, 2009, after a jury trial on the matter. *Id*.

According to the Annual Report of Mental Condition dated October 31, 2019, submitted in the probate matter, plaintiff arrived at the SORTS facility in Farmington, Missouri, on or about April 1, 2009, as a detainee (prior to the probate judgment). She was transferred to the SORTS program in Fulton, Missouri in July of 2014. On July 14, 2014, plaintiff was convicted of 2nd degree assault for attacking a staff member at the SORTS program in Fulton. At that time, she was sentenced to the MDOC for seven (7) years imprisonment. *See State v. Bemboom*, No. 14CW-CR00632-01 (13th Jud. Cir., Callaway County Court). In January of 2019, plaintiff was released from the MDOC and readmitted to the SORTS program in Farmington.

Almost immediately after returning to the SORTS program in Farmington, Missouri, plaintiff appears to have had difficulty adjusting. Between April of 2019 and November of 2022,

4

plaintiff was criminally charged six times with attacking a DMH employee, attacking another civil detainee or destruction of DMH property. *See State v Bemboom*, No. 19SF-CR00730-01 (24th Jud. Cir., St. Francois County Court); *State v. Bemboom*, No. 20SF-CR01462-01 (24th Jud. Cir., St. Francois County Court); *State v. Bemboom*, No. 20SF-CR01611-01 (24th Jud. Cir., St. Francois County Court); *State v. McSean*, No. 22SF-CR00497-01 (24th Jud. Cir., St. Francois County Court); *State v. McSean*, No. 22SF-CR00973-01 (24th Jud. Cir., St. Francois County Court) and *State v. McSean,* No. 22SF-1035 (24th Jud. Cir., St. Francois County).

When plaintiff pled guilty to misdemeanor assault in the 4th degree for attacking a DMH employee at SORTS on November 18, 2022, she was transported to St. Francois County Jail for a ninety (90) day sentence of imprisonment. *See State v. Bemboom*, No. 20SF-CR01611-01 (24th Jud. Cir., St. Francois County Court). Plaintiff escaped from confinement at St. Francois County Jail on January 17, 2023.[4] Thus, on January 18, 2023, plaintiff was charged with felony escape, and on March 16, 2023, she was charged with felony stealing a motor vehicle. *See State v. McSean*, No. 23SF-CR00017-01 (24th Jud. Cir., St. Francois County) and *State v. McSean*, No. 23SF-CR00219-01 (24th Jud. Cir., St. Francois County).

Plaintiff's remaining criminal charges between 2019-2022 are currently pending and awaiting trial. As noted above, plaintiff is currently detained in St. Francois County Jail in Farmington, Missouri.

### The Complaint, Amended Complaint and Second Amended Complaint

Plaintiff filed her original complaint in this action on July 12, 2023. [ECF No. 1]. The original complaint was handwritten and numbered twenty-seven (27) pages. The complaint named twenty-three (23) defendants in this action. She named defendants in their individual and official

---

[4]Plaintiff was apprehended on January 20, 2023, in Ohio.

capacities. Because plaintiff's original complaint was not filed on a Court-provided form in violation of Local Rule 2.06(A) and failed to state a claim for relief, the Court, on November 6, 2023, ordered plaintiff to file an amended complaint on a Court-provided form no later than November 27, 2023. [ECF No. 6]. Plaintiff filed her amended complaint, ECF No. 7, which numbered one-hundred and two (102) pages on February 27, 2023.

In her amended complaint, plaintiff named thirty-four (34) defendants.[5] Plaintiff named defendants in both their individual and official capacities. Because plaintiff's complaint was made up entirely of conclusory statements and repeated the same allegations against all thirty-four (34) defendants but still failed to include factual allegations, the Court ordered plaintiff to amend her pleading on a Court-provided form. [ECF No. 14]. Plaintiff submitted an amended, forty-three (43) page pleading, on March 26, 2024. [ECF No. 18]. Only seven (7) pages of the forty-three (43) page second amended complaint are on a Court-provided form, in direct contravention of this Court's February 28, 2024 Opinion, Memorandum and Order. Moreover, plaintiff's allegations are again repetitive, while light on factual assertions. Despite the pleading issues in this action, the Court will do its best to recount the allegations within plaintiff's second amended pleading.

### Plaintiff's Allegations Within the Second Amended Complaint

Plaintiff Kelly McSean is an inmate within the St. Francois County Jail. But plaintiff's second amended complaint, brought under 42 U.S.C. § 1983, involves events that took place while

---

[5]Plaintiff named the following individuals as defendants in this action: Denise Hacker (Chief Operating Officer); George Killian (Director of SORTS); William Anderson (Unit Manager); Stacey Neef (Medical Director); Brenda Swift (Grievance Coordinator); Charles McIntyre (Grievance Coordinator); Chris Chamberlain (Head of Security); Darla Martin (Security/Property); Joe Easter (Nurse); Sara Purkett (Nurse); Misty Kindle (Doctor); Kathy Hammond (Doctor); Kelly Cronin (Nurse); Linda Miller (Nurse); Melinda Stevens (Therapist); Brigit Moore (Therapist); Cassandra Guinn (Therapist); Kim Katzenberger (Nurse); Ruth Edgar (Security Aide); Krystal Weinhold (Nurse); Jeremy Crice (Security Aide); Julaina White (Security Aide); Joe Kochis (Nurse); Lavaughn Brathwaite (Psychiatrist); Melinda Cramer (Therapist); Janell Lynn (CCA); Kyle Pinkley (Nurse); Amy Forsythe (Nurse); Melanie Dotson (Nurse); Nezar El-Runie (Doctor); Stacey Gegg (Therapist); Kimberly Bye (Director of Treatment Services); Keith Bainbridge (Recreation Aide); and Dennis Ellis (Security Aide).

plaintiff was a civilly committed detainee at SMMHC in Farmington, Missouri. Plaintiff names the following as defendants: Denise Hacker (Chief Operating Officer, SMMHC); David Hunter (Doctor at Fulton SORTS); Misty Kindle (Doctor, SMMHC); and Linda Moll (Psychologist). Plaintiff sues defendants in their individual and official capacities.

Plaintiff was instructed in the Court's February 28, 2024 Opinion, Memorandum and Order to state clearly in her amended complaint if she had a medical diagnosis of gender dysphoria. Despite this instruction, plaintiff has not alleged that she has or was given such a diagnosis during her time as a civil detainee.

Plaintiff recounts in her second amended complaint that she spent time while at Fulton SORTS with Dr. David Hunter, in approximately July of 2014, seeking a surgical castration. Namely, plaintiff does not indicate that she sought castration because of her feelings relating to gender dysphoria, or because Dr. Hunter *had diagnosed* her with gender dysphoria. Rather, plaintiff asserts that in September and October of 2013, she inquired with Dr. Hunter about hormone treatment and perhaps "gender reassignment" surgery.[6] It is unclear if plaintiff was seeking such treatment due to her issues as a convicted sex offender or due to her issues relating to alleged gender dysphoria. Plaintiff does not elaborate on this issue in her second amended complaint.

Plaintiff asserts that despite *not* having a diagnosis of gender dysphoria, during her time at SORTS in Fulton in 2014, she was allowed to wear women's clothing and undergarments. She claims that she was given a "social assessment" at Fulton in 2014, and after the "social assessment," it was determined by unnamed persons that she could wear make-up and earrings,

---

[6]The Court is skeptical of plaintiff's claim that she spoke with Dr. Hunter at SORTS in Fulton in September and October of 2013 and sought such "treatment." As recounted in the "Background" section above, plaintiff did not enter SORTS in Fulton until July 14, 2014. She was at SMMHC between April 1, 2009, and July 14, 2014.

7

sports bras, and women's clothing at Fulton. Despite this fact, she claims that David Hunter violated her civil rights while she was at SORTS in Fulton by failing to address her as Kelly and failing to call her by the proper gender-affirming (female) pronouns. Plaintiff also claims that Dr. Hunter failed to support her freedom to express her identity and failed to treat her purported gender dysphoria in a lawful manner.

Plaintiff was informed in the Court's prior Order that the events relative to Dr. Hunter, which occurred between 2013 and 2014, are outside of the five-year statute of limitations under § 1983. Thus, plaintiff cannot pursue claims against Dr. Hunter for any constitutional violations relating to Hunter's alleged failure to act on her requests for such "treatment."[7] Those claims are subject to dismissal as they are outside the statute of limitations of 42 U.S.C. § 1983.

While detained at SMMHC in the SORTS program in Farmington, Missouri, plaintiff alleges that she was undergoing treatment with Counselor Rachel Colwick in August of 2020.[8] She claims she told Colwick that she was having "problems identifying as a female" and regarding "stressors involved in not receiving requested items" such as women's clothing. She claims that during this time, she wanted to dress as a woman. Plaintiff does not indicate what Colwick's response was to her admissions, nor does she indicate that she sought a change in behavior from either Colwick or the entity that employed Colwick, SMMHC. The Court notes that plaintiff's

---

[7] While there is no statute of limitations contained within 42 U.S.C. § 1983, the Supreme Court "has held that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). *See also Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019) (determining that statute of limitations for § 1983 case arising in Minnesota "comes from the state's personal injury statute"). Thus, for cases arising in Missouri, the five-year statute of limitations for personal injury actions found in Mo. Rev. Stat. § 516.120(4) applies to § 1983 actions. *Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005). While the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).

[8] Colwick is not a named defendant in this action.

interactions with Colwick occurred prior to plaintiff's legal name change to Kelly McSean, which was in October of 2021. *See In re Larry J. Bemboom*, No. 21SF-DR00274 (24th Jud. Cir., St. Francois County Court).

According to plaintiff, Linda Moll, a Psychologist a SMMHC, wrote in a July 28, 2021, Annual Report regarding plaintiff's mental condition that "Mr. Bemboom also endorses a strong incongruence between his assigned/natural gender and his experienced/expressed gender, a strong desire to be treated and addressed as a female (Kelly)." Plaintiff claims that Moll additionally wrote in the assessment, "Further assessment may be helpful in determining whether a diagnosis of gender dysphoria is appropriate." Plaintiff does not indicate, however, if she was given further assessment to determine if she suffered from gender dysphoria after Moll tendered the July 2021 Annual Report.

In her second amended complaint plaintiff asserts that it was Moll's job to complete the Annual Reports due to the State of Missouri under the Missouri Sex Offender laws. She claims that because of this, and because Moll was required to review plaintiff's medical history, she had a duty to recognize that plaintiff likely suffered from gender dysphoria. Despite questioning whether plaintiff needed further assessment for issues of gender dysphoria in the 2021 Annual Report, plaintiff claims it was Moll's obligation to follow-up on this issue rather than simply refer the matter to plaintiff's team members at SMMHC, which is apparently what occurred.

Plaintiff claims generally in the second amended complaint that Moll denied her adequate treatment for gender dysphoria in violation of the Fourteenth Amendment. She states that she reported her beliefs and concerns relating to gender dysphoria to Moll during interviews for the annual reports, explaining how she wanted to go by the name Kelly, be called by female pronouns and express her identity as a female. Plaintiff purports that she told Moll that wearing women's clothing supported her personal beliefs. And Moll had in her possession prior notes from both Dr.

9

Hunter and Rachel Colwick which indicated plaintiff's prior medical reports in which she sought to wear women's clothing, asked for castration and indicated a desire to dress and act as a female.

Plaintiff appears to assert that these prior medical records should have been transferred to Dr. Moll, Denise Hacker and Misty Kindle at SMMHC. Plaintiff claims broadly that she was denied treatment for not only gender dysphoria, but that her Equal Protection rights were violated when she was denied access to women's undergarments at SMMHC and the right to be known by women's pronouns (and the name Kelly) at SMMHC.

Regarding Misty Kindle, for example, plaintiff asserts that Kindle, a doctor at SMMHC, who was the "treatment team leader," was deliberately indifferent to her serious medical needs and violated her Equal Protection rights. Plaintiff claims that she reported "concerns as to [plaintiff's purported] gender dysphoria" "in 2019 thru [sic] 2022" to Kindle. She does not clarify, however, exactly what those "concerns" entailed. Rather, plaintiff states that she told the "treatment team," presumably including Kindle, that her preferred pronouns and her preferred name of Kelly McSean would be "helpful as to expressing [her] identity as to the woman [she] was." Plaintiff also allegedly told Kindle and the treatment team that her preferred name and pronouns would "support [her] gender dysphoria and [her] beliefs." Allegedly, plaintiff told the treatment team and Kindle that "the wearing of women's clothing and undergarments (bras and panties) supported [her] inner personal beliefs and were calming. . ." Plaintiff asserts that she also told Kindle specifically that wearing women's undergarments and clothing allowed her the freedom to express her identity. Plaintiff says that Kindle told her that the "treatment team would discuss [her] beliefs and concerns." Plaintiff does not allege in her pleadings that she asked Kindle to diagnose her with gender dysphoria, or that Kindle actually did so.[9]

---

[9]This Court takes judicial notice that in another case before this Court, plaintiff states unequivocally in her amended pleading that she was diagnosed with gender dysphoria by Misty Kindle on June 21, 2022.

10

Last, plaintiff asserts that she reported her "beliefs and concerns as to "her gender dysphoria" to Denise Hacker, CEO at SMMHC, through "letters, grievances and in treatment team meetings" between 2019 and 2021. Plaintiff states that in her letters she described how "[her] preferred name and proper pronouns were helpful as to [her] expressing [her] identity as to the woman [she] was." She claims she also asked to be called Kelly, as well as she/her, which she claims, "supported her gender dysphoria and [her] beliefs." Plaintiff asserts that she also told Hacker that "the wearing of women's clothing and undergarments," including bras and panties, "supported [her] personal beliefs and were calming."

For relief in this action plaintiff seeks damages.

## Discussion

Plaintiff sues four defendants in this action, including: Denise Hacker (Chief Operating Officer, SMMHC); David Hunter (Doctor at Fulton SORTS); Misty Kindle (Doctor, SMMHC); and Linda Moll (Psychologist). The Court has already found that all claims against Dr. David Hunter, a physician at SORTS facility in Fulton Hospital are time-barred. Thus, the only claims subject to review are those against the remaining defendants.

### A. Official Capacity Claims

Plaintiff sues the individual defendants in their individual and official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999).

---

*See McSean v. Bullock, et al.,* No. 4:23-CV-1174 JMB (E.D.Mo.). I that case, however, she identifies Misty Kindle as a nurse practitioner at SMMHC rather than a doctor.

11

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings,* 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Thus, plaintiff's official capacity claims against defendants are subject to dismissal.

### B. Individual Capacity Claims

#### 1. Equal Protection Claims Against Defendants Moll, Kindle and Hacker

Plaintiff alleges that the denial of the right to wear women's undergarments at SMMHC violates her rights under the Equal Protection Clause of the Fourteenth Amendment. She additionally alleges defendants discriminated against her on the basis of her gender identity.

The Eighth Circuit faced the issue of whether disallowing transgender inmates to wear gender affirming clothing violated the Equal Protection Clause in *Beard v. Falkenrath*, 97 F.4th 1109, 1116-18. (8th Cir. 2024). In *Beard*, the issue arose when the defendant prison officials sought qualified immunity. The first prong of this qualified immunity analysis would require the Court to determine whether plaintiff, a transgender civil detainee, had an equal protection right to wear clothing that aligned with her gender identity. The Eighth Circuit did not rule on this issue; however, instead it jumped to the second requirement of the qualified immunity analysis, *i.e.,* whether there was a clearly established equal protection right to wear gender affirming clothing in a sex offender rehabilitation center.

In *Beard* the Court of Appeals found that defendants were entitled to qualified immunity because "there was no controlling authority [or] robust consensus of cases of persuasive authority

12

establishing that their actions violated the Constitution." *Id*. (citing *Dean v. Bearden*, 79 F.4th 986, 989 (8th Cir. 1983) (internal quotations omitted)). Plaintiff did not have a clearly established equal protection right to wear gender affirming clothing in prison in *Beard*, and therefore defendants were entitled to qualified immunity on this ground. *Id.* (emphasis added).

Here, the Court is presented with the same issue that was left undecided in *Beard*—did defendants violate plaintiff's equal protection rights by not allowing her to wear women's undergarments in a sex offender rehabilitation center. Liberally construed, for purposes of initial review, the Court finds plaintiff has stated a plausible claim that defendants have violated her equal protection rights under the Fourteenth Amendment by not allowing her to wear undergarments that are consistent with her gender identity. The Court will issue service on defendants Moll, Kindle and Hacker in their individual capacities as to plaintiff's Equal Protection claims under the Fourteenth Amendment.

2. **Deliberate Indifference Claims Against Moll, Kindle and Hacker**

At all relevant times, plaintiff was a civil detainee in governmental custody. Accordingly, plaintiff's constitutional claims fall within the ambit of the Fourteenth Amendment. *See Senty-Hougen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006). Under the Fourteenth Amendment's due process clause, the protections of the Eighth Amendment are fully applicable to non-prisoners held in governmental custody, including civil detainees. *Id.* A civil detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) ("[a]lthough an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner"); *see also Youngberg v. Romeo*, 457 U.S. 307, 324-25 (1982) (recognizing states have a constitutional duty to provide medical care to civilly committed detainees).

To violate the Eighth Amendment's proscription against cruel and unusual punishment, plaintiff must show that (1) he suffered from an objectively serious medical need, and (2) defendant knew of but deliberately disregarded that need. *See Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). A serious medical condition is one that has been diagnosed by a physician as needing treatment or is so obvious that even a lay person would perceive the need for a doctor's attention. *Id.*

State officials may violate the prohibition of cruel and unusual punishment when they are deliberately indifferent to the serious medical needs of transgender civil detainees. Transgender inmates have successfully petitioned the Court to assert their constitutional rights to medical treatment from prison officials. *See Hicklin v. Precythe*, No. 4:16-cv-1357-NCC, 2018 WL 806764 (E.D. Mo. Feb. 9, 2018) (granting preliminary injunction to provide transgender inmate hormone therapy and access to gender-affirming canteen items); *see also Robinson v. Labrador*, No. 1:24-cv-00306-DCN (D. Idaho Sept. 3, 2024) (granting plaintiffs' motion for preliminary injunction against enforcement of an Idaho Act that would prohibit gender affirming hormones and surgery for transgender inmates).

It is possible that medical treatment for gender dysphoria could include allowing a transgender inmate to wear undergarments consistent with their gender identity. *Hicklin*, 2018 WL 806764; *cf. Long v. Nix*, 86 F.3d 761, 764 (8th Cir. 1996) (noting experts disagree about treatment for gender dysphoria but one expert recommended "inmate be given limited opportunities to wear women's clothes to relieve his anxiety"). Therefore, liberally construed, plaintiff has stated a plausible claim that defendants have violated her constitutional rights by their deliberate indifference to her gender dysphoria. For this reason, the Court will issue service on defendants Moll, Kindle and Hacker in their individual capacities on plaintiff's claims of deliberate indifference to her serious medical needs.

**Motion for Appointment of Counsel**

Plaintiff has filed a motion for appointment of counsel. [ECF No. 19]. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that she can adequately present her claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex, and service has not yet been accomplished in this action as of yet. The Court will entertain future motions for appointment of counsel as the case progresses.

**Motion to Combine the Costs of Plaintiff's Cases**

Before the Court is plaintiff's motion to combine the cost of the 20% payment of the filing fee from this action with the filing fees in the various actions she currently has before this Court. Plaintiff lists this civil case number along with seven other civil case numbers pending in this District, and she complains that her jail account is repeatedly debited each month to satisfy her filing fee obligation in each case. Plaintiff states that this practice leaves her with no money, and

15

she can be understood to ask this Court to order jail officials to stop debiting her account to recoup her multiple filing fee obligations. There is no basis to grant plaintiff the relief she seeks. It is not improper for officials to repeatedly debit a prisoner's account to satisfy the prisoner's multiple fee obligations. The United States Supreme Court has held that the in forma pauperis statute calls for simultaneous, not sequential, recoupment of multiple filing fees incurred by an indigent prisoner. *Bruce v. Samuels,* 577 U.S. 82 (2016). In reaching that decision, the Supreme Court recognized that a prisoner who had filed multiple actions, like plaintiff here, could exhaust her prisoner account each month. *Id.* at 631. Plaintiff's motion is meritless and will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process on plaintiff's second amended complaint as to defendants Misty Kindle, Linda Moll and Denise Hacker in their individual capacities on plaintiff's claims for violations of plaintiff's Equal Protection rights and for claims for deliberate indifference to plaintiff's serious medical needs. Defendants Shall be served through the waiver agreement this Court maintains with the Missouri Attorney General's Office. Because these individuals are employees of the Missouri Department of Mental Health, they should be served through waiver with that entity.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants brought in their official capacities are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendant Dr. David Hunter are **DISMISSED** for failure to state a claim as plaintiff's claims against Dr. Hunter are time-barred.

**IT IS FURTHER ORDERED** that plaintiff's motions to proceed in forma pauperis [ECF Nos. 20 and 25] are **DENIED.** Plaintiff was previously granted in forma pauperis in this action, however she is expected to pay the full filing fee because she is currently incarcerated.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 19] is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion to combine the costs of filing fees from his various cases [ECF No. 24] is **DENIED.**

Dated this 27th day of September, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE